Good morning. Everyone can have a seat. Is this the same place as my meeting? I don't think so. Yes, well Justice Hall is our presiding for today. She has had an emergency and that's why she is not here. She will listen to the tapes. For the parties on the matter, let me just ask as you step up to identify yourselves please and just spell your name. Speak up loud and clear because that will record your voice. It will not magnify it. You can hear we're having to compete already with the outside traffic and the sirens going by. So we will not, this is the only case on the call, so we're not going to keep you to the time limit, but understand we have read your briefs. All right, you can call the first case for us. Case number 12-2660, Tenebrae State Park Association Mutual Insurance v. Law Offices of Tuzzolino & Terpinas. Good morning, Your Honor. Good morning. My name is Jeffrey Fudd. I represent the Defendant Appellants, Will Terpinas Jr. and Antonio Coletta. Ordinarily, had you not just given me that instruction, I'd ask Lee to reserve some time at the end for rebuttal, but we don't care about time. Well, within reason. Within reason. I'll be reasonable. The issues, although I know them very well, are not that difficult. This is an appeal of a declaratory judgment action brought by the Defendant Appellee I.S.B.A. Mutual Insurance Company to void its promise to provide Will Terpinas Jr. with professional liability coverage under a claims-made policy that I.S.B.A. Mutual wrote. Counsel, if I could interrupt you, before you start, because both briefs raise a question about the standard of review, if you could address that issue, please. I believe it's de novo, Your Honor, and I think it's de novo under the Continental Casualty case that I cited in my brief, because we are talking about the construction of an insurance contract. It's also a decision made by the trial court on a motion for summary judgment as a matter of law, which is also de novo. So our position is it's de novo. Thank you. Sure. Again, this is a deck action. And as this Court knows, it's well settled that the burden of proof in such a cause of action is on the plaintiff insurance carrier. The policy provisions in that policy are to be liberally construed in favor of the insurer. That's my client, Will Terpinas Jr. Any ambiguities in that policy have to be resolved in favor of that insurer, Will Terpinas Jr., and the carrier's right to void coverage in this case has to be clear and free from doubt. All in all, these are extremely stringent burdens, which, Your Honor, I don't believe the record shows were met in this case. The first thing this Court has to examine is the policy itself. And the policy itself contains what's called a severability clause. And then that severability clause, as the Supreme Court stated in the U.S. F&G v. Globe case, provides that there is a separate contract of insurance with each of the insurers. So ISBA Mutual made a separate promise to insure and provide professional liability insurance coverage to Will Terpinas Jr., to Sam Tussolino, and to the law offices of Tussolino and Terpinas LLC. Because that severability clause is in there, there is a separate contract of insurance with each of these gentlemen and their corporate entity, which is their law firm. These gentlemen were first insured by ISBA Mutual back in 2005. After 2005, there were several renewals, which were accomplished by the simple filling out of one sheet of paper, which I'm sure Your Honors have read over and over again because I know I have. This is really the only piece of paper that has anything to do with this case. Also included in that policy is an innocent insured clause. That's the gravamen of our defense of this declaratory judgment case. And that innocent insured clause provides that whenever coverage under this policy will be excluded or lost, and that's what happened here, Your Honors, this coverage was lost by Will Terpinas Jr. Because of the insured's failure to provide timely notice, the company agrees that such insurance as would otherwise be afforded under this policy should be applicable with respect to any insured who do not personally fail to give timely notice after having knowledge of the conduct that forms the basis of the claim. All insured coverage by this provision must immediately comply with all policy provisions regarding reporting the claim upon learning of the unreported claim. That is insurance carrier and insurance policy legalese, which basically says if you're an innocent insured and there's a delay in reporting the claim, and because there's a delay in reporting that claim, you lose your coverage, you still get coverage. But there's no question here that Mr. Terpinas, as soon as he discovered what was going on, reported it to the insurance company, correct? That is absolutely correct, Your Honor. But yet they're claiming that he's not an innocent insured. He is because of that. What occurred here, and let me get into the facts, in January of 2008. We're familiar with the facts. Well, this policy ran from May to May. It went from May 1st of 2007 to May 1st of 2008. Terpinas had no knowledge of the bad acts by his partner, Sam Tussolino. Sam Tussolino filled out the application on April 29th, 2008. Will Terpinas, Jr. still had no knowledge. On June 10, 2008, Terpinas got knowledge. He got the letter and said, guess what? There's a malpractice claim out there. He immediately gave it to ISPA Mutual. This is a 39-day delay. That's covered by the Innocent Insured Clause. Will Terpinas, Jr. is innocent. He had no knowledge of the claim. As a result of the delay of the claim, he lost his coverage. He immediately notified ISPA Mutual. This exact same thing happened in New Hampshire. Now, no court in this state has seen this before. We've researched it up one side and down the other. The trial court researched it up one side and down the other. The trial court didn't have the New Hampshire case because it came out about a month after this notice of appeal was filed. In that case, we have the same, almost exact same facts. We've got two lawyers, practiced together for 45 years, a guy named Christie, a guy named Tessier. Mr. Christie and Mr. Tessier were insured by the Great American Insurance Company. Mr. Tessier started stealing some of his client's money without the knowledge of Mr. Christie. The application in the Tessier case is identical to the application here. In the Tessier case, the question in the application was put to the court on question 6A on the renewal application after inquiry. Is any lawyer aware of any claim, incident, act, or omission in the last year that could result in a professional liability claim against any attorney in the firm or predecessor firm? Mr. Christie, who was the innocent partner in that case, checked no, just like Mr. Tussolino, checked no on this application. And the court went into a detailed discussion saying the fact that there's an innocent insured clause in this policy creates an ambiguity. You can't have an innocent insured clause on one point and then take away the coverage again for the same reason on another point. That brings us to the only case that has even talked about this factual scenario or this situation, and that's the Home Insurance v. Dunn case. Home Insurance v. Dunn has been around a long time. It's been around since 1991 or 1993. The difference between Home Insurance v. Dunn, first of all, it involves virtually the same facts but not quite. You've got Elliot Dunn, who was an old Lake County lawyer that had a personal injury case and put some money in his trust account. He had a partner, a guy named Larry Cooper, again, another Lake County lawyer who was a pretty well-known bankruptcy trustee. Mr. Cooper fell into some hot water because he had some bad investments. I think it was with a ladies' basketball team back in the 70s called the Chicago Hustle. He lost a lot of money, and because he lost a lot of money, he ended up dipping into the trust account without his partner's knowledge. The court in the Home Insurance v. Dunn case found that the policy was void ab initio because when Mr. Cooper signed the application, he knew that he had stolen from his firm's trust account. In the case we have here, the difference, the key difference, the key distinguishing factor between Home Insurance v. Dunn and this case is that in this case, there is absolutely no language in the policy or in the renewal application which would impute the bad guy's knowledge to the innocent partner. In our case here, there is nothing close to the Home Insurance v. Dunn, and in Home Insurance v. Dunn, the language I'm talking about, and we cited in our reply brief, there is specific language in the Home Insurance policy that says, by acceptance of this policy, the insured, which is all the innocent lawyers who fall under the definition of the insured, agrees that the statements in the application are personal representations, that they shall be deemed material, and that this policy is issued there. There is nothing in here. There is nothing in the renewal application, this one piece of paper that we've read over and over again, or the policy that in any way imputes the representations of Sam Tussolino to Wilter Penis Jr. I have a question about the Dunn case. That was a Seventh Circuit case, and they interpreted and I believe followed Illinois law, correct? They did. It's old, it's unfair, it's unjust, and it's distinguishable. Okay. Have any other courts followed the Dunn case? Not to my knowledge. Not to my knowledge. And then going back to your comments with regards to the Christie case, in there I believe the court was trying to distinguish between actual knowledge and imputed knowledge. And from our understanding in reading the briefs and the record, that there was no question that Mr. Trepinius was not aware of what was taking place, correct? You're absolutely correct. And instructive, and the best part is in the New Hampshire case, skip to the end. The most instructive part of the New Hampshire case is the language right before they reverse the trial court. And that Supreme Court said, in the absence of any language specifically imputing knowledge to innocent insurers of false statements made on the short form application, the contract read as a whole as ambiguous because of the innocent insurer clause. In view of the ambiguity, we will read the policy against the insurer, like they're supposed to, just like this state would, in order to honor the reasonable expectations of the policy law. Then the court goes on to say, of course, an insurance company can preclude interpretation of language against it by including clear and unambiguous policy language. They could have. They didn't. It's their burden. And again, the trial court in this case brought up a case out of Minnesota, and that's instructive. That's what Judge Novak relied upon. She said, I find that the Minnesota mutual case, and the complete site is 600 F. 705, is instructive here, and that's what you relied on. Interestingly, in the Minnesota mutual case, the policy had strict language, clear language. It says, the statements in the application are the representations of all insurers. And then in a footnote, the Minnesota mutual case said, the insurers are defined as the law firm and the two individual attorneys. There is no language in the ISBA mutual company that says the representations of Sam Tussolino are the representations of all insurers. The language in here is basically Sam Tussolino in his own individual representation, possibly it could be determined that he's also acting on behalf of the law firm as a whole, because the law firm can't act unless one of its members acts, but he is not acting on behalf of Wilter Pienis, Jr. Wilter Pienis, Jr. had a reasonable expectation, Your Honors, of having insurance coverage. He bought a policy. He paid his premium. There's a separate contract of insurance between him and ISBA mutual. He's got an innocent insured clause that says, listen, if there's something out there that you don't know about and it causes a delay in you making a claim, you still have coverage, so long as you didn't participate in the bad conduct. He didn't participate in the bad conduct. You can't say that enough times. He didn't have any knowledge of it before Tussolino made the representations. Accordingly, at the least, there's an ambiguity. It's my argument, Your Honors, that the innocent insured clause prevails. He gets coverage based on that clause. With that, if there's any other questions, I'm here. So is economic fire versus war applicable here? You know, that is economy fire versus war, again, is not a professional liability case. I think and I do not believe there's an innocent insured clause. In that case, I see common law. But isn't that the case that a lot of the Illinois cases follow with regards to the issue? Absolutely. They do. And, again, I think that provides coverage also in a case like this. Thank you very much, Your Honors. I respectfully request that this Court outright reverse the decision of Judge Novak. Oh, I did have one question. Yes, ma'am. If we reverse, then what are our directions to the trial court? What is your relief? I think at a bare minimum, you reverse the decision of the trial court that voided the policy. It says that the policy is in full force and effect. As to Will Terpenes, Jr. and Tussolino and Terpenes, LLC, I can see an argument where you give it to Terpenes individually and not the law firm. I can see that argument. I think that could be supported by the record in this case because I think Tussolino could be found to have signed on behalf of the law firm and on behalf of himself, but not on behalf of Tussolino. And that comes back to the severability clause again. You've got a separate contract with all three insurers, and the three insurers identified in this policy are Tussolino individually, Terpenes individually, and the law firm. Thank you. Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning. Please, the Court, Counsel, for the Plaintiff Appellee, Illinois State Bar Association Mutual Insurance Company that I'll refer to as ISBM Mutual, Robert Chemers, and Scott Howey on the briefs. Justice Reyes, you asked a question of Mr. Thutt concerning the standard of review. We have submitted to the Court on Pages 7 and 8 of our brief of appellee that the standard of review is abuse of discretion. We cited a number of cases involving summary judgment, granted rescission, and the standard of review is abuse of discretion. The appellants in their standard of review blurb in their brief of appellant say it is de novo because it's summary judgment. But then at Page 25 of the brief of appellant, they say that the rescission is granted with the sound discretion of the trial court. So we think they concede it is, in fact, an abuse of discretion standard, and it's interesting to note, Your Honors, that nowhere in their opening brief or in the reply brief do they contend that the circuit court in granting rescission to ISBM Mutual on the policy in any way abused its discretion. That having been said, this is not a case involving insurance coverage. This is a case involving insurance policy formation. What you have heard with respect to the innocent insured provision, the severability clause, and other aspects of a policy is a bootstrap. The policy doesn't exist, so we can't look at provisions in the policy to say that the policy that doesn't exist should not have been rescinded. The innocent insured clause is in a policy, but not this policy. The circuit court rescinded this policy. And those are issues that go to coverage. They have nothing whatsoever to do with policy formation. It is interesting to note that if you take away the argument that you heard with respect to severability, the argument that you heard with respect to the innocent insured condition of the policy, there is no argument, none, that rescission was improperly granted or that it wasn't abused of discretion. They ignore the elements of rescission. The elements of rescission are simply stated in Section 154 of the Illinois Insurance Code. It's a misrepresentation that goes to the materiality of the risk to be assumed or the hazard the insurance companies ask to cover. It's unmistakable that a failure to advise an insurance company on a renewal application of potential claims, and contrary to what's stated at page three of the reply written by the defendants, this is not simply checking the wrong box on the renewal application. In fact, if this application had been signed by Terpenes instead of the bad guy, Sam Tuzolino, it wouldn't make any difference because the cases are legion under Section 154. Even a misrepresentation or a mistake made in good faith, made innocently, is still a misrepresentation if it induces the insurance company to issue the policy. So if Terpenes knew nothing about it and he signed the renewal application because he didn't talk to Sam Tuzolino about all the things Tuzolino did, which was file false pleadings in Kenosha, Wisconsin, file false pleadings in other cases in Illinois, then offer the client $670,000 in hush money and not pay it. That's all the things Tuzolino did. It's alleged in detail in the lawsuit that was thereafter filed against Tuzolino, Terpenes, and their law firm. That's unmistakable. The argument, Your Honors, that the severability condition must be looked at is a non-starter because that condition is found in the policy. Plus, if there are separate contracts, each would be based on the renewal application, which was fraught with fraud. That's what that provision says, but they ignore that aspect of the provision. It would be a separate contract based on the same application, fraught with fraud. So it gets them nowhere. It's a non-starter. USF&G v. Globe, our Supreme Court recognized what a severability clause really is, and that is the example there was you have a trucking company that's insured. An employee of the trucking company is injured. There was an additional insured on that policy. The additional insured was sued. The carrier said there's a bodily injury to an employee exclusion, therefore there's no coverage. Our Supreme Court said, wait a minute. There are two insureds, the named insured, the additional insured. The employee was an employee of the named insured. So the policy applied separately to the additional insured, which meant that that exclusion didn't apply because the employee wasn't the additional insured's employee. That's what a severability clause does, and Your Honors know that. It has nothing whatsoever to do with policy formation. You can only get to the clause if you have a policy. Counselor, here we actually have three insureds, correct? We have Mr. Tosolino, Mr. Trepinas, and the law firm. There is a named insured, and then the two individuals will be insured. That's correct. So if this was a three-part law firm, how would your argument with regards to the severability actually work on that scenario? I mean, here we have two individuals. If there's another lawyer involved in the law firm, would that lawyer have been covered? On this policy? On this policy. No, the policy was rescinded. It was rescinded because the misrepresentation went to the policy formation. The policy didn't come into existence. We heard about New Hampshire. We heard about the Lawson case in New Jersey. This court doesn't need to go that far. 219 South Dearborn is the United States Court of Appeals for the Seventh Circuit. It's a few blocks from this courthouse. That court had a case before it in 1992, which Mr. Thuchess told this court, Home Insurance v. Dunn, has virtually the same facts as this case. Yes, it does. But it has a distinction that the circuit court picked up on, that the dissent in Lawson, the New Jersey Supreme Court picked up on, which distinction was lost on the Lawson majority and the Christie Supreme Court decision from New Hampshire. The distinction is the policy provisions don't apply to a misrepresentation in an application for the policy. The misrepresentation prevents the policy from coming into existence in the first place. When you read Home Insurance v. Dunn, Circuit Judge Bower was very clear that there are provisions of the policy. But in reaching the decision, which, by the way, reversed the district court and sent the case back for the purpose of entering judgment for a home insurance company, he said, We don't look at the policy language. We look at the application. And the statement of that court was, quote, Though the other attorneys, there were 12 of them, did not intend to deceive, the falsehood on the application was fatal. The court recognized the distinction between wrongdoing that invokes an exclusion and in the very procurement of the policy. That's what we have here. In fact, Mr. Thutt, the attorney for both appellants, the tort plaintiff and Wilter Penis said virtually the same facts. It is on all fours. Plus, although it had a provision in it not called innocent insured, which the ISB mutual policy, if there was a policy, would have in it, it had a waiver of exclusion provision, which when your honors read it is virtually identical to the innocent insured provision. And that provision was unmistakably clear, according to the court, that it doesn't apply because it has nothing whatsoever to do with policy formation. Counsel, I have the same question for you with regards to the Dunn case. Has any other court in Illinois followed the Dunn case? Our research indicated that no court has followed it, but that also indicates, your honor, no court has rejected it. They say it's distinguishable, yet they refuse to recognize its rationale. It is the law of Illinois. Bear in mind, this court, you may certainly read, and I'm sure your honors will, along with Justice Hall, will read the Supreme Court of New Jersey lawsuit case. You'll read the Supreme Court of New Hampshire case. But those courts are foreign to Illinois. They have nothing whatsoever to do with Illinois law, and they decided their cases before them on a policy-based analysis, absolutely contrary to what Judge Bauer, writing for the Seventh Circuit, did in Dunn. Counsel, can I interrupt you one more time? Okay. So in regards to the Lawson case and the Christie case, it's policy, but at the same time it also addresses the issue of public interest. And doesn't Section 154 here indicate that insurance companies are not to void policies against innocent insureds in cases similar to this? There is nothing in Section 154 of our insurance code that speaks to guilty insureds or innocent insureds. I'm not talking about guilty insureds or innocent insureds, but isn't the intent of Section 154 to provide insurance for those who have insurance policies? Isn't that the intent? Well, that would be saying that every claim that's made is covered because the insured has a policy. Counsel, but my question is, isn't that the intent of the section? No. It's not. It's not the intent. It's not a public interest provision. Well, I think the insurance is fraught with public interest from the standpoint you buy insurance to protect yourself and to have, they say, auto insurance. Every motorist, every pedestrian is a beneficiary of an auto insurance policy. I suppose every potential client is a potential beneficiary of my law firm's E&O coverage for me and Mr. Howey and the other lawyers in our law firm. But that doesn't mean that when there's fraud going to the procurement of the policy, this court can do what has never been done before in the state of Illinois, partial rescission of an insurance policy, which is what the courts did in Lawson and in Christie, which, as I said, is contrary to Illinois law. They based their analysis on a coverage analysis rather than a policy formation analysis. And I think that is where they fail because we have the Seventh Circuit, and the Seventh Circuit sitting in diversity, as your honors well know, their function is to determine an issue in the manner they believe the Illinois Supreme Court would determine the issue if faced with that same question. Can I just ask one? There's one thing about this case that really bothers me when I compare it to the Dunn case. There was a policy in place for what, three years before this? There were policies, yes. Yeah, there was a series of policies renewed every year. And if the offending lawyer had just checked yes, then everything would be covered. And you don't think that that makes a distinction in this case, that there would have been coverage for not only the offending person, but the firm and Mr. is it, I can't think of his name.  Trapedas. If he had just honestly said, yes, I'm a rotten dog and I've stolen, he'd still be protected and everyone would be protected? You don't think that that distinguishes this from Dunn? Well, if people are truthful and give the correct information, then that scenario would occur. However, your honors, this is a renewal application which asks the question, are you as any member of the firm aware of any potential claims or incidents or circumstances that may lead to a claim? And the answer given was no. I know the answer was given, no. As troubling as that may be, the law in Illinois, since applications for insurance were first created, has been the duty to provide truthful and accurate information lies with the applicant for insurance. The insurer, the insurance company, is entitled to rely on the information given on that renewal application, and numerous Illinois courts have embraced the idea that an insurance company, when it receives an application such as the ten-question form in this case, has no obligation to conduct an independent investigation into the accuracy of that information. Do you think that this court has any basis on which to apply an equitable partial rescission? Well, that is what I refer to the Lawson case as pick-and-choose rescission. Because our Supreme Court, as far back as 1875 in the Lovingston v. Short case, basically said you can't keep the part of the policy you like and give back the part or the contract you like and give back the part of the contract that you don't like or that doesn't favor you. And from that point forward, Illinois law at no time, in no case we found, not cited by the defendants, has ever recognized partial rescission of an entire contract. Say the case again for me. Lovingston v. Short. It's cited in our brief here. No case has said you can have partial rescission, that the misrepresentation of the fraud, as recognized by Home Insurance v. Dunn, goes to the entire contract. The fraud vitiates the contract. So you can't say the fraud by the bad guy vitiates the contract as to the bad guy. As to the law firm. But it does nothing to the contract. Somehow the contract has a Teflon shield as to the good guy. That's not what the law says. It could be considered a harsh result, but that's rescission. Fraud vitiates the contract. You learn that in contract one in law school. And the cases in Illinois are uniform. They have not cited one Illinois case that says you can keep the part of the contract you like and give back the part that doesn't favor you, which would be partial rescission. Equities? They ask for a balancing of the equities. Equity does not mean sympathy. Equity is fairness. They call the. Counsel, while you're looking for your papers, let me ask you a question. In your briefs you seem to make a distinction that the innocent insured in Illinois applies in situations like where there's fraud, for example, like when arson takes place. But it doesn't apply when there's a misrepresentation to the innocent insured under any policy. That's correct. Your Honor, you asked Mr. Fudd about economy preferred versus Warren. And he said that it didn't involve rescission, which is true. There are three other cases. There's Wasik, Salimi, and Mussilli, all of which involved a denial of coverage for policy-based reasons. They don't have a policy here, including exclusions under policies whose validity was unquestioned. Those are cases that involve arson or vandalism. They typically were homeowners' policies. They involve a husband and a wife who may have not seen things eye to eye. The husband goes and burns down the house. The wife gets half of the proceeds from the insurance policy because she was the innocent insured. But doesn't Wasik get into the formation of the policy and also goes into this particular language and what language is in the policy, which is what counsel has raised in his argument? He raised it in his argument. However, Wasik, Warren, Salimi, and Mussilli are coverage cases that involve exclusions, and whether the exclusion applies to one or both insurers. They have nothing whatsoever to do with rescission or whether a proper, complete, entire contract was created. It was assumed by those courts. Some panels of this court decided some of those cases. I don't have the sites in front of me. I'm sure that at least two of them are First District cases. That having been said, they are not rescission cases. They were coverage cases. They had nothing to do with was there a policy in force? Was there a valid policy? And the interesting thing about this case, we heard it from Mr. Thott in his opening argument here, is the entire argument of the defendants is utterly attached to policy provisions, which is, in our view and a view of the applicable Illinois law, a refusal to acknowledge the meaning of the circuit court's ruling. And that is no reason to reverse, not just that the claim was not covered, according to the circuit court, but that the policy did not exist. Now, the circuit court, as the record in this case so clearly bespeaks, suggested that counsel take a look at the Lawson case. The Lawson case was the Supreme Court of New Jersey case. Obviously, Judge Novak did not have the benefit of asking us to review the Christie case. That came down in September of last year. This case was already winding its way up to this court at that time. That having been said, we briefed Lawson at length. We briefed whether Illinois law permits, Justice Lampkin, partial rescission. And the circuit court, without an abuse of discretion, because there's none contended by the defendants here, held that Lawson was not Illinois law. She chose to follow the federal case out of Virginia, the Minnesota lawyers' mutual case, as well as home insurance versus Dunn. And home insurance versus Dunn, as both Your Honors recognize, is unmistakably based upon Illinois law, Section 154 of the Insurance Code. Equities, the balance of the equities. The only balance of the equities recognized in the reply brief filed by the defendants in this case is a ham-fisted thumb on the scale, where it is not even. They take the position that as between an insurance company and an insured, if Mr. Topinas was an insured under a rescinded policy, it's such that it's like baseball. The tie goes to the runner. Well, the insurance company loses. That's not equity. Equity is not the party with the money loses in favor of the party without the money. Topinas is not an innocent insured because he is not an insured. That's the premise of our entire argument. No one is, because there is no policy. If this Court embraces the rationale and the method of decision utilized by Judge Bauer for the majority in home insurance versus Dunn, you will not look at the policy. You will look at the application. You will take the position, Your Honors, that a misrepresentation on the application precludes a policy from coming into existence. Therefore, you can't look at a policy and its provisions and say the provisions and the policy that didn't come into existence somehow act to allow that policy to exist for the purpose of excising from the fraud the party who didn't participate in it. So your argument is that the moment the misrepresentation was made on the form by Mr. DeSalegno, there was no policy. There was no coverage, I should say. Well, that's correct. Because that ISBM mutual relied to its detriment, uncontroverted on this record, on that application and the underwriting that they performed to issue a policy to thereafter find out that at the time that application was submitted, the insurer was aware of potential claims which had now been reported as actual claims. Now, the insurance industry will be turned on its head if insurers cannot rely on applications, renewal applications or new business applications. They will have to have staff who will investigate every answer given before they can actually issue a policy or a scenario like this, which is a recurring scenario because you saw it in the New Jersey Supreme Court, you saw it in the New Hampshire Supreme Court, you saw it in the federal court in Richmond, Virginia, you saw it at 219 South Dearborn in Home Insurance v. Dunn. This happens. Some lawyers lie, don't tell their partners, and then the shock comes when the claim comes in and the insurance company says, well, wait a minute. You knew about that claim when you applied for the policy. Therefore, we, in reliance on what you didn't tell us, issued a policy, and that policy is void. It's based on fraud. It should be rescinded. That's what happened here. It's not a nefarious act, it's not an evil act, and it's not void as against public policy. It's contract law. And as much as the defendants have had petulant outrage in their briefs about this case, not displayed during the course of the oral argument, it's the law. And they tried very, very hard to make this insurance company out to be the bad guy. They have arguments. As an employee, I don't get to write a surreply. That's why I welcome an oral argument. I can then comment about my opponent's reply brief. They say it's ISBA Mutual's business model, business model. They say that at page 4 of the reply brief, to turn down claims against insurance for seeking coverage. That's ludicrous. They point to the first district's decision in Greenfield. Justice Paul, you're sitting in her seat, was a member of that panel. It was a case of national first impression, but ISBA Mutual lost, so somehow we're tarred with the brush that we're the bad guy. They say Mr. Tuzolino was innocent. He didn't do anything wrong. He didn't do anything dishonest. It's the mantra throughout the reply brief, and yet they also say it's uncontroverted what he did. Filed false pleading. Lied to his client. Offered his client hush money. Filed stipulation signing other lawyers' names to it. Filed, had a case dismissed, had experts barred and told the client for 18 months he was still negotiating a settlement. Honest? What he was, he was not the thief that existed in Home Insurance v. Dunn. Hardly honest. The thief in Dunn was called the, quote, unquote, crooked attorney by Circuit Judge Bauer. The disdain they may have for the insurance company, the insurance industry, and the concept of rescission should not cause this court to depart from long-established Illinois law and recognize that there was no abuse of discretion. They don't even contend that there was, and that the judgment entered by the circuit court should be affirmed. We'd ask the court to do that. Are there any questions? Thank you. Thank you. Your Honor, thank you very much for your time. Just briefly, in addressing Judge Reyes's questions regarding the public policy behind Section 154, and we said it in our brief, Section 154 was never intended to be used as a sword by the insurance company to vitiate coverage. The public policy behind Section 154 is to protect insurers from possible fraud by insurance agents and falsifying answers given by insurers and applying for insurance. It is a commercial protection statute. It's not a statute that gives an insurance carrier any more rights than it would have otherwise. With regard, again, to home insurance versus Dunn, no, nobody's followed it. I'm asking this court to reject it. It's not fair. It's not right. And it is time to take that arrow out of ISBA mutual's quiver. Get rid of it. If you don't want to, it's distinguishable from the facts of this case. If this court does not want to make a public policy decision saying home insurance is unfair, unjust, and just plain wrong, it can look at the policy language in home insurance versus Dunn, which basically says that the representations of one insured are the representations of all insureds. If, as Mr. Chambers indicated, just look at the application, that's all we're looking at. The application in home insurance versus Dunn specifically states the representations of the guy signing this are the representations of all insureds. This application does not say that. For that reason alone, you can throw home insurance Dunn out the window. For public policy reasons and to protect the public and to protect innocent attorneys, I think you should throw it out altogether. Thank you very much again for your time. I appreciate it. My clients appreciate it. Again, we ask you to reverse the judgment of the ruling of Judge Novak. Make a finding that there is, in fact, insurance coverage for Will Terpenes, Jr. and the losses of Bruce Leland Terpenes, LLC. Thank you, Your Honor. Thank you. Thank you all. This is a very interesting, very interesting case. We will take it under advisement and we now stand adjourned.